ELLEN M. MAHAN
Deputy Section Chief
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
DAVIS H. FORSYTHE
E-mail: davis.forsythe@usdoj.gov
Colorado Bar No. 51737
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
999 18th Street
South Terrace – Suite 370
Denver CO 80202
Tel.: (303) 844-1391
Fax: (303) 844-1350

KENJI M. PRICE #10523
United States Attorney
RACHEL S. MORIYAMA #3802
Assistant United States Attorney
Room 6-100, PJKK Federal Building
300 Ala Moana Boulevard
Honolulu, Hawaii 96850
Rachel.Moriyama@usdoj.gov

Attorneys for Plaintiff United States of America

(Additional Attorneys Listed on Following Page)

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and STATE OF HAWAII DEPARTMENT OF HEALTH, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 19-224 |
| WASTE MANAGEMENT OF HAWAII, INC. and CITY AND COUNTY OF HONOLULU, | ) ) ) ) | **COMPLAINT** |
| Defendants. | ) ) | |

CLARE E. CONNORS    9736
Attorney General
DIANE K. TAIRA    3761
EDWARD G. BOHLEN    8333
Deputy Attorneys General
Office of the Attorney General
465 S. King Street, Room 200
Honolulu, Hawai`i 96813
Telephone:  (808) 587-3050

Attorneys for Plaintiff the State
of Hawaii Department of Health

The United States of America ("United States"), by the authority of the Attorney General of the United States, on behalf of the United States Environmental Protection Agency ("EPA"), and the State of Hawaii Department of Health ("DOH") allege as follows:

## STATEMENT OF THE CASE

This is a civil action for injunctive relief and penalties brought pursuant to Sections 301(a) and 309 of the federal Clean Water Act ("CWA"), 33 U.S.C. §§ 1311(a) and 1319, against Waste Management of Hawaii, Inc. ("WMH") and the City and County of Honolulu ("Honolulu") for repeated discharges of pollutants in runoff from the Waimanalo Gulch Sanitary Landfill ("Landfill") to Hawaii's coastal waters in violation of a National Pollutant Discharge Elimination System ("NPDES") permit, and other NPDES permit violations.  Defendant WMH has pled guilty to criminal charges and incurred criminal fines relating to a subset of the discharges alleged in this Complaint.  This civil action seeks injunctive relief to stop Defendants' ongoing violations of the NPDES permit governing the Landfill, and civil penalties for Defendants' past and ongoing unlawful discharges and violations of that NPDES permit.

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of this action and over the Defendants pursuant to 28 U.S.C. §§ 1331, 1345, 1355, 1367, and 33 U.S.C. § 1319(b).

2.     Venue is proper in the District of Hawaii pursuant to 33 U.S.C. § 1319(b) and 28 U.S.C. §§ 1391 and 1395 because the events giving rise to this action arose within this judicial district, and because Defendants own and/or operate the Landfill within this district.

3.     Authority to bring this civil action is vested with the Attorney General of the United States pursuant to Section 506 of the CWA, 33 U.S.C. § 1366, and 28 U.S.C. §§ 516 and 519.

4.     DOH has authority to bring this civil action under Hawaii Revised Statutes Sections 342D-11 and 342D-30.

5.     The United States has provided notice of the commencement of this action to the State of Hawaii pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

## DEFENDANTS

6.     Defendant WMH is a Delaware corporation which at all times relevant to this Complaint operated the Landfill pursuant to a contract or contracts with Honolulu and under Solid Waste Management Permit No. LF-0182009,

2

issued by the Hawaii Department of Health, Solid Waste Branch.  The Solid Waste Management Permit identified Defendant Honolulu as the "owner" and Defendant WMH as the "operator" of the Landfill.

7.    Defendant Honolulu is a municipality located within the State of Hawaii.  At all times relevant to this Complaint, Defendant Honolulu owned the Landfill and the property on which it is located and held the NPDES Permit authorizing certain discharges of storm water from the Landfill.  Defendant Honolulu participated directly in decision making regarding operation of the Landfill.  In its operation of the Landfill on Defendant Honolulu's behalf, Defendant WMH has acted as Defendant Honolulu's agent.

## STATUTORY AND REGULATORY FRAMEWORK

8.    The CWA prohibits the discharge of any pollutant by any person except as in compliance with the CWA.  33 U.S.C. § 1311(a).

9.    The CWA defines "discharge of a pollutant" as any addition of any pollutant to navigable waters from any point source, 33 U.S.C. § 1362(12); "person" to include corporations, municipalities, and political subdivisions of a State, 33 U.S.C. § 1362(5); "point source" as any discernible, confined and discrete conveyance, including any pipe, ditch or channel, from which pollutants are or may be discharged, 33 U.S.C. § 1362(14); and "navigable waters" as the waters of the United States, 33 U.S.C. § 1362(7).

3

10.    The CWA broadly defines "pollutant" to include "solid waste, incinerator residue … garbage … chemical wastes, biological materials … rock, sand, cellar dirt … industrial, municipal and agricultural waste discharged into water."  33 U.S.C. § 1362(6).

11.    EPA may issue NPDES permits authorizing discharges of pollutants otherwise prohibited under the CWA.  33 US.C. § 1342(a).

12.    The State of Hawaii, through its Department of Health's Clean Water Branch ("Clean Water Branch"), has been approved by EPA to administer the State's NPDES program for permitting of discharges into its navigable waters. 39 Fed. Reg. 43759 (Dec. 18, 1974); 33 US.C. § 1342(b).

13.    NPDES permits are required for discharges of storm water "associated with industrial activity." 33 U.S.C. § 1342(p)(2)(B); 40 C.F.R. § 122.26(a)(1)(ii). EPA's regulations define discharges of storm water "associated with industrial activity" to include storm water discharges from solid waste landfills. 40 C.F.R. § 122.26(b)(14)(i) and (v).

14.    The State of Hawaii regulates discharges of storm water associated with industrial activities through its NPDES General Permit.  Haw. Admin. R. § 11-55 App. B.  The revisions of the Hawaii NPDES General Permit relevant to this action were dated October 2007 and December 6, 2013.

4

15.    The State of Hawaii's water quality standards include a requirement that "[a]ll waters shall be free of substances attributable to domestic, industrial or other controllable sources of pollutants, including … [f]loating debris … pathogenic organisms … [and] deleterious substances … in amounts sufficient to interfere with any beneficial use of the water."  Haw. Admin. R. § 11-54-4(a).

16.    The State of Hawaii's solid waste management regulations define "leachate" as "water or other liquid that has percolated or passed through or emerged from solid waste and contains dissolved, soluble, suspended, or miscible materials removed from the waste or due to contact with solid waste or gases therefrom."  Haw. Admin. R. § 11-58.1-03.

17.    Pursuant to Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), EPA is authorized to bring a civil action seeking appropriate injunctive relief and civil penalties for violations of Section 301(a) of the CWA or for violations of an NPDES Permit issued by a State.  Violations occurring between January 13, 2009 and November 2, 2015, are subject to a civil penalty of up to $37,500 per day for each violation; violations occurring after November 2, 2015, are subject to a civil penalty of up to $53,484 per day for each violation. 33 U.S.C. § 1319(d) and 40 C.F.R. § 19.4.

18.     The CWA also includes criminal penalties for negligent or knowing violations of the CWA.  33 U.S.C. § 1319(c).  The same underlying activities may subject a defendant to both criminal and civil liability under the CWA.

19.     Pursuant to Hawaii Revised Statutes Sections 342D-11 and 342D-30, violations of an NPDES Permit issued by the State are subject to appropriate injunctive relief and a civil penalty of up to $25,000 per day for each violation.

## GENERAL ALLEGATIONS

### Waimanalo Gulch Sanitary Landfill

20.     The Landfill is a municipal solid waste landfill located at 92-460 Farrington Highway, Kapolei, Oahu, Hawaii.  The Landfill is owned by Defendant Honolulu, and operated by Defendant WMH.

21.     By design, discharges of storm water associated with industrial activity from the Landfill flow to a sedimentation basin (also referred to as a detention basin) at the base of the Landfill.  The sedimentation basin discharged through two outfall pipes (retrofitted in 2016 to discharge through a single outfall pipe) and an emergency spillway into Waimanalo Gulch, which flows approximately 0.22 miles from the point of discharge to the Pacific Ocean.

22.     The outfall pipes and emergency spillway that discharge into Waimanalo Gulch are "point sources" within the meaning of the CWA.  33 U.S.C. § 1362(14).

6

23.     Waimanalo Gulch and the Pacific Ocean are "navigable waters" within the meaning of the CWA, 33 U.S.C. § 1362(7).

24.     The Landfill is located in the lower reaches of Waimanalo Gulch.  A significant watershed directly upgradient of the Landfill drains through Waimanalo Gulch, and during rains can contain substantial storm water flows.

25.     Accordingly, the Landfill design must in some fashion account for upgradient storm water flows to keep them from running directly onto the surface of the Landfill, where they could damage the Landfill and come into contact with Landfill waste.

**The 2010 NPDES Permit**

26.     On August 30, 2010, the Clean Water Branch issued to Defendant Honolulu a renewed Notice of General Permit Coverage ("2010 NPDES Permit"). The 2010 NPDES Permit incorporates Hawaii's NPDES General Permit by reference, including Hawaii Administrative Rules Chapter 11-55, Appendices A (NPDES Standard Permit Conditions) and B (NPDES General Permit Authorizing Discharges of Storm Water Associated With Industrial Activities).

27.     The 2010 NPDES Permit provides that storm water associated with industrial activity at the Landfill may be discharged from the specified discharge point (latitude and longitude coordinates corresponding to the sedimentation basin's outfall pipes) into Waimanalo Gulch subject to certain conditions,

including specific effluent limitations and compliance with Hawaii water quality standards.  On October 19, 2012, the Clean Water Branch administratively extended the 2010 NPDES Permit.

28.    The 2010 NPDES Permit constituted the NPDES permit for the Landfill from August 30, 2010 through December 8, 2013.

29.     Hawaii's NPDES General Permit requires that permittees develop and implement a Storm Water Pollution Control Plan (SWPCP) to minimize the discharge of pollutants in storm water runoff and maintain compliance with conditions of the general permit. The SWPCP must include a pollutant control strategy.  The SWPCP must be reviewed and updated as often as needed to comply with the conditions of the General Permit and the NPDES Permit.  Haw. Admin. R. § 11-55, App. B Pt. 6(a) and (d).

30.    The 2010 NPDES Permit provides that "[t]he Permittee shall …[r]evise the Storm Water Pollution Control Plan for each proposed future modification to the facility (i.e. 37 acre facility expansion; Material Drop-Off Facility, off-site run-on diversion, existing detention pond expansion, etc.)  The revised SWPCP shall be submitted to the Clean Water Branch (CWB) for review and comment *at least 30 calendar days prior to the start of operational activities of the facility modification*."  2010 NPDES Permit ¶ 1 (emphasis in original).

31.     The 2010 NPDES Permit further provides that "The Permittee shall …

[s]ubmit any changes to information on file with the [Clean Water Branch] as soon

as such changes arise…." Id. ¶ 5.

32.     The 2010 NPDES Permit further provides that "The Permittee shall …

[i]mplement, operate, and maintain the facility's SWPCP to ensure that storm

water discharges associated with industrial activities will not cause or contribute to

a violation of applicable State water quality standards (WQS).  Discharges of storm

water associated with industrial activates shall comply with WQS…." Id. ¶ 3.

33.     The 2010 NPDES Permit contains sampling requirements and effluent

limitations, including the following, with the requirement that "[p]ollutant

concentration levels shall not exceed the storm water discharge limits or be outside

the ranges indicated":

- Total Suspended Solids ("TSS"): 100 mg/l;

- pH Range (Standard Units): 5.5-8.0;

- Total Recoverable Iron: 1.0 mg/l;

- Total Recoverable Lead: 0.029 mg/l; and

- Total Recoverable Zinc: 0.022 mg/l

Id. ¶ 2.  Pursuant to the 2010 NPDES Permit, "[d]ischarges of storm water

associated with industrial activities shall comply with … the[se] effluent

limitations…." Id. ¶ 3.

34.     The 2010 NPDES Permit also obligated Defendants to monitor and report storm water flow on a calculated or estimated basis at least once per year. Id. ¶ 2.

35.     The 2010 NPDES Permit required Defendants to maintain records of inspections, including the dates on which inspections were conducted, inspection findings, and corrective actions taken. Haw. Admin. R. § 11-55, App. B Pt. 6(c).

36.     The 2010 NPDES Permit obligated Defendants to immediately stop, reduce, or modify the discharge as needed to stop or prevent a violation of the basic water quality criteria as specified in Hawaii Administrative Rules Chapter 11-54-4. Haw. Admin. R. § 11-55, App. B Pt. 9.

37.     The 2010 NPDES Permit also required compliance with the following portions of Hawaii Administrative Rules Chapter 11-55: Sections 11-55-34.04(a), 11.55.34.07, 11-55-34.11, and 11.55.34.12, and Appendices A (DOH, Standard General Permit Conditions) and B (NPDES General Permit Authorizing Discharges of Storm Water Associated with Industrial Activities). Id. ¶ 7.

38.     Under the 2010 NPDES Permit, Mr. Joseph Whelan of Defendant Waste Management of Hawaii, Inc. was recognized as the duly authorized representative of Defendant Honolulu to submit information/documents for compliance with the 2010 NPDES Permit. Id. ¶ 9.

**WMH's Storm Water Pollution Control Plan (SWPCP)**

39.    The Storm Water Pollution Control Plan in effect at the Landfill as of January, 2011 was dated January, 2009 and identified as Revision 3 (the "2009 SWPCP").

40.    Section 2.5.4 of the 2009 SWPCP stated that:

"The 2003 expansion plan for the landfill required the construction of a soil stabilization berm (west berm) along the northwestern perimeter of the landfill, which consequently covered (filled in) a portion of the existing western drainage channel.  Prior to the construction of the west berm in 2006, two temporary 48-inch corrugated metal pipes (CMP) were installed in the western drainage channel to accommodate up canyon surface water, which flows down the drainage channel.  The pipes convey run-off generated from the canyon area above the landfill as well as small amounts of run-off from the northern-western corner of the MSW area.  These pipes will be abandoned after the west berm construction is completed and the western drainage channel is realigned further to the west.  These two temporary 48-inch diameter CMP pipes carry run-off beneath the west structural fill berm in to the lower reach of the channel and down to the detention pond located at the southwestern corner of the site."

11

41.    Section 2.5.6 of the 2009 SWPCP, entitled "Prevention of Pollutant Discharges," stated that:

> "The surface water management system for the landfill should prevent any discharge of pollutants to U.S. waters or violation of water quality standards by:
>
> - Preventing run-off of surface water that has contacted waste;
> - Controlling erosion to prevent loss of cover or washout of refuse slopes;
> - Managing leachate, and;
> - Retaining and removing silt from surface water before it is discharged from the site."

42.    Section 4.1.3 of the 2009 SWPCP addressed leachate disposal as part of its Pollution Control Strategy:

> "[l]eachate that is pumped out [of the Landfill's sumps] … is temporarily stored on-site in three 20,000-gallon steel frac tanks…. An outside contractor pumps the leachate out of the storage frac tanks and into a mobile tanker truck. The leachate is then transported to the Waianae Wastewater Treatment Plant for disposal."

43.    Section 4.3.2.2 of the 2009 SWPCP, entitled "Drainage System BMPs," stated in part that "the drainage system will also be inspected after

significant storms (greater than 0.1 inch of rainfall) or wet weather to ensure that the system remains in good condition and free of trash and debris.  Maintenance to the drainage system will be conducted as necessary."

**Expansion of the Landfill and the Western Diversion Project**

44.    On October 22, 2009, Defendant Honolulu's application for a permit authorizing expansion of the Landfill to create additional capacity to accept municipal solid waste was approved by the Hawaii State Land Use Commission.

45.    Defendants carried out various construction activities as a result of the expansion permit, and on or about October 22, 2010, opened a new cell at the Landfill, Cell E6, and began disposing of municipal solid waste, including solid waste, incinerator residue, and garbage, into the new cell.

46.    Construction of Cell E6 was undertaken within the context of the longer-running "Western Diversion Project" at the Landfill, which sought to capture and segregate flows from the canyon upgradient of the Landfill so that they would no longer be comingled with runoff from the Landfill, but would instead be captured, bypass the Landfill, and be discharged directly to Waimanalo Gulch.

47.    As described in Section 2.5.4 of the 2009 SWPCP, while work on the Western Diversion Project was ongoing, storm water from the canyon upgradient of the landfill was to be "channeled through two temporary 48-inch corrugated metal pipes … in the western drainage channel," which were to "be abandoned

13

after the west berm construction is completed and the western drainage channel is realigned…"

48.    On September 21, 2010, prior to opening Cell E6, Defendant Waste Management Hawaii wrote a letter to the Clean Water Branch advising that it intended to begin accepting waste in Cell E6 at the Landfill, and updating its SWPCP accordingly, including the following "interim measures [] required for operations [sic] of this partially complete new cell":

- "[i]nstallation of a 36-inch high density polyethylene (HPDE) pipe and inlet to collect and direct site run-on storm water from up canyon of [Cell E6] underneath the cell …"

- "[i]nstallation of a temporary diversion berm and rain flap on the up canyon end of Cell [E6] to prevent site run-on from entering the cell …"; and

- "[i]nstallation of the [Cell E6] sump and pump to manage any storm water that collects within the cell.  Upon operation of the cell, any liquid collected in the sump would be managed as leachate."

49.    As of August, 2010, Defendants had removed or otherwise decommissioned the "two temporary 48-inch corrugated metal pipes" (the "48-inch Corrugated Pipes") referenced in Section 2.5.4 of the 2009 SWPCP as the means by which storm water from up canyon of the Landfill would be channeled away

from the surface of the Landfill and to the sedimentation basin until "the west berm construction is completed and the western drainage channel is realigned further to the west."  The western berm and the western drainage channel were not functional until February 14, 2011.

50.     As of October 22, 2010, the "36-inch high density polyethylene (HDPE) pipe" (the "36-inch HDPE Pipe") referenced in Defendant Waste Management Hawaii's September 21, 2010 letter to the Clean Water Branch was serving as the functional replacement for the decommissioned 48-inch Corrugated Pipes.

51.     As of December 19, 2010, Defendants still had not revised the 2009 SWPCP to reflect that the 48-inch Corrugated Pipes had been removed or otherwise decommissioned. Nor had Defendants submitted notification of this change to the Clean Water Branch.

52.     As evidenced by subsequent events, the 36-inch HDPE Pipe was not adequate to capture and channel storm water from up canyon of the Landfill.

53.     On December 9 and 10, 2010, approximately 1.45 inches of rain fell on the Landfill. Following that rain event, Defendants failed to inspect the drainage system, and maintain records of those inspections, to ensure that the system remained in good condition and free of trash and debris.

**The Storms of December 19-21 and 27-28, 2010**

54.   Between December 19 and December 21, 2010, and again on December 27 and 28, 2010, large rain storms struck in the vicinity of the Landfill and the 36-inch HDPE Pipe became blocked by rocks and sediment. As a result, storm water that flowed into the cell from up canyon of the Landfill was not captured by the 36-inch HDPE Pipe and flooded Cell E6.

55.   Defendants failed to inspect the Landfill's drainage system and maintain records of those inspections after these rain events to ensure that the system remained in good condition and free of trash and debris.

56.   The storm water that flooded Cell E6 between December 19 and 21, 2010, and December 27 and 28, 2010, came into contact with the municipal solid waste that Defendant WMH had disposed of in Cell E6.

57.   Between December 19 and December 23, 2010, Defendant WMH's employees pumped storm water that collected in Cell E6 and came into contact with municipal solid waste into an open manhole at the end of a pipe leading to the sedimentation basin.  From there, this liquid was released to Waimanalo Gulch and flowed to the Pacific Ocean.

58.   On December 28, 2010, storm water that collected in Cell E6 and came into contact with municipal solid waste overflowed E-6 and entered the sedimentation basin. From there, this liquid was released to Waimanalo Gulch and flowed to the Pacific Ocean.

## The Storm of January 12-13, 2011

59.     On January 12 and 13, 2011, another large rain storm struck in the vicinity of the Landfill and the 36-inch HDPE Pipe again became blocked by rocks and sediment. As a result, storm water that flowed into the cell from up canyon of the Landfill was not captured by the 36-inch HDPE Pipe and flooded Cell E6.

60.     The storm water that flooded Cell E6 on January 12 and 13, 2011 came into contact with the municipal solid waste that Defendant WMH had disposed of in Cell E6.

61.     Between January 12 and 13, 2011, Defendant WMH's employees left a manhole uncovered, allowing storm water that had collected in Cell E6 and come into contact with municipal solid waste to flow into the manhole and into a pipe leading to the sedimentation basin.  From there, this liquid was released to Waimanalo Gulch and flowed to the Pacific Ocean.

62.     Following the January 12 and 13, 2011 discharges from the Landfill, Defendant Honolulu recorded elevated pathogen levels in waters downstream from the Landfill, with enterococcus in waters entering the Pacific Ocean measured at 68,000, 98,000, 47,000, 39,000, 3,900, and 4,400 colony forming units/100 mL on January 13, 14, 15, 16, 17, and 18, 2011, respectively.  These measurements significantly exceeded Hawaii's water quality criteria for recreation of 104 colony forming units/100 mL in any single sample.

63.     Following the January 12 and 13, 2011 discharges from the Landfill, a significant amount of debris and solid waste, including medical waste, was observed:

- at the sedimentation basin outlet structures;

- at the sedimentation basin berm overtopping the spillway;

- in Waimanalo Gulch immediate downstream of the Landfill outfalls;

- in the waters and shoreline at Waimanalo Gulch's outlet to the Pacific Ocean; and

- along the shoreline up to 1.5 miles south of Waimanalo Gulch's outlet to the Pacific Ocean.

**EPA Administrative Order**

64.     On May 30, 2012, EPA issued to Defendants an Amended Finding of Violation and Order pursuant to Sections 308(a) and 309(a) of the CWA ("2012 CWA Order").  Under the 2012 CWA Order, Defendants were ordered to:

- complete construction of all features of the Western Diversion Project necessary to successfully segregate upgradient storm water from Landfill generated runoff by February 15, 2011;

- complete a study of the Landfill's sedimentation basin to evaluate its capacity to store and treat storm water;

- develop an interim storm water monitoring plan designed to sample and analyze discharges associated with at least four separate storm events that lead to a discharge during each calendar year (unless there were fewer than four such storm events); and

- submit monthly reports to EPA of all sampling and analysis required under the 2012 CWA Order.

## The 2013 NPDES Permit

65.     On December 9, 2013, the Clean Water Branch issued Honolulu a Renewal Notice of General Permit Coverage ("2013 NPDES Permit") notifying it that the Landfill was covered under the newly revised Hawaii NPDES General Permit, Appendix B.  The 2013 NPDES Permit incorporates Hawaii's NPDES General Permit by reference, including Hawaii Administrative Rules Chapter 11-55, Appendices A (NPDES Standard Permit Conditions) and B (NPDES General Permit Authorizing Discharges of Storm Water Associated With Industrial Activities).

66.     Under Hawaii NPDES General Permit, Appendix B ¶ 6, as incorporated by the 2013 NPDES Permit, Defendants remain responsible for developing and implementing the Landfill's SWPCP.

67.     The 2013 NPDES Permit also incorporates by reference the sampling requirements of the 2010 NPDES Permit.

68.    The 2013 NPDES Permit constitutes the current NPDES permit for

the Landfill.

**WMH's Criminal Indictment and Plea Agreement**

69.    On April 30, 2014, WMH and two of its employees were indicted by a

federal grand jury on criminal charges under the CWA relating to discharges of

contaminated storm water from the Landfill during and after the storms of

December 19-21, 2010, and January 12-13, 2011.

70.    On July 10, 2015, a Memorandum of Plea Agreement ("Plea

Agreement") was filed in criminal case number CR15-00523-SOM, signed on

behalf of the United States and WMH.  In the Plea Agreement, WMH admitted

that it was "guilty of negligently discharging pollutants in violation of the Clean

Water Act, as charged in Counts 1 and 2 of the Information."  Plea Agreement ¶ 9.

71.    Count 1 of the Information states in relevant part that "[f]rom

December 19, 2010, and continuing thereafter until December 23, 2010 … [WMH]

… did negligently cause the discharge of pollutants from a point source to a water

of the United States in violation of a permit by: causing a contractor to pump storm

water containing pollutants derived from contact with [municipal solid waste],

including solid waste, incinerator residue, and garbage, from Cell E6 into an open

manhole of a large pipe that ultimately flowed to three outfall pipes that discharged

to Hawaii's coastal waters, in violation of" the 2010 NPDES Permit.  Information

Count 1.

72.   Count 2 of the Information states in relevant part that "[f]rom on or

about the evening of January 12, 2011, and continuing thereafter until the morning

of January 13, 2011 … [WMH] … did negligently cause the discharge of

pollutants from a point source to a water of the United States in violation of a

permit by: leaving a manhole uncovered that allowed storm water containing

pollutants derived from contact with [municipal solid waste], including solid

waste, incinerator residue, and garbage, to flow from Cell E6 into the open

manhole of a large pipe that ultimately flowed to three outfall pipes that discharged

to Hawaii's coastal waters, in violation of" the 2010 NPDES Permit.  Information

Count 2.

73.   The Plea Agreement included the stipulation that "[t]his

Memorandum of Plea Agreement does not provide or promise any waiver of any

civil or administrative actions, sanctions, or penalties that may apply, including but

not limited to: fines, penalties, claims for damages of natural resources,

suspension, debarment, listing, licensing, injunctive relief, or remedial action to

comply with any applicable regulatory requirement."  Plea Agreement ¶ 23.

**FIRST CLAIM FOR RELIEF**
(*Violations of Conditions or Limitations of 2010 NPDES Permit: August through December, 2010*)

74.    Paragraphs 1 through 73 are incorporated herein by reference.

75.    As of August, 2010 Defendants had modified the Landfill's off-site run-on diversion system by decommissioning the 48-inch Corrugated Pipes and relying instead on the 36-inch HDPE Pipe to channel storm water from up canyon of the Landfill away from the surface of the Landfill.

76.    Defendants did not revise the 2009 SWPCP to reflect these modifications to the Landfill's off-site run-on diversion system 30 calendar days prior to operation, nor did they promptly submit these changes to the Clean Water Branch, in violation of Paragraphs 1 and 5 of the 2010 NPDES Permit.

77.    When Defendants began disposing of municipal solid waste into the Landfill's new Cell E6 on or about October 22, 2010, relying on the 36-inch HDPE Pipe to channel storm water from up canyon away from the surface of the Landfill in place of the decommissioned 48-inch Corrugated Pipes, they failed to implement the 2009 SWPCP to ensure that storm water discharges associated with their industrial activities did not cause or contributed to a violation of applicable State water quality standards, in violation of Paragraph 3 of the 2010 NPDES Permit.

78.    After the rain events of December 9 and 10, 2010, Defendants failed to inspect the drainage system and maintain records of that inspection to ensure that the system remained in good condition and free of trash and debris in accordance with Section 4.3.2.2 of the SWPCP. As a result, Defendants failed to address blockages in the storm water system, and failed to maintain surface water drainage around the perimeter of the landfill to prevent surface water run-on into the active disposal area, as required by Sections 4.2.2 and 4.3.2.2 of the SWPCP.

79.    Pursuant to Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), Defendants are liable for civil penalties of up to $37,500 per day for each violation of a condition or limitation of the 2010 NPDES Permit.  See 40 C.F.R. § 19.4.

80.    Pursuant to Hawaii Revised Statutes Section 342D-30, Defendants are liable for civil penalties of up to $25,000 per day for each violation of a condition or limitation of the 2010 NPDES Permit.

<u>**SECOND CLAIM FOR RELIEF**</u>
*(Discharges of Pollutants and other Violations of
Conditions or Limitations of 2010 NPDES Permit:
December 19-23, 2010, and January 12-13, 2011*)

81.    Paragraphs 1 through 73 are incorporated herein by reference.

82.    Between on or about December 19, 2010 until December 23, 2010, Defendant WMH discharged storm water that had come into contact with municipal solid waste and garbage in Cell E6 of the Landfill through one or more

pipes or conveyances leading to its sedimentation basin, and from there through the permitted discharge point to Waimanalo Gulch and to the Pacific Ocean.

83.   In the Plea Agreement, Defendant WMH admitted to violating the terms of the 2010 NPDES permit by discharging storm water containing pollutants derived from contact with municipal solid waste to the Pacific Ocean from on or about December 19, 2010 until December 23, 2010.  Plea Agreement ¶ 13(f).

84.   Between January 12 and 13, 2011, Defendant WMH again discharged storm water that had come into contact with municipal solid waste and garbage in Cell E6 of the Landfill through one or more pipes or conveyances leading to its sedimentation basin, and from there through the permitted discharge point to Waimanalo Gulch and to the Pacific Ocean.

85.   In the Plea Agreement, Defendant WMH admitted to violating the terms of the 2010 NPDES permit by discharging storm water containing pollutants derived from contact with municipal solid waste to the Pacific Ocean on January 12 and 13, 2011.  Plea Agreement ¶ 13(h).

86.   For several weeks following the January 12 and 13, 2011 discharges, municipal waste, including medical waste, was observed and recovered by Defendant WMH and others in waters downstream of the Landfill.  In addition, elevated pathogen levels were detected in waters downstream from the Landfill by Defendant Honolulu on January 13, 2011 and in subsequent days.  The presence of

waste and elevated pathogens led DOH to temporarily prohibit recreational use of the affected waters.  The January 12 and 13, 2011 discharges of contaminated storm water thus caused or contributed to violations of applicable State water standards, in that they contributed "[f]loating debris … pathogenic organisms … [and/or] deleterious substances … in amounts sufficient to interfere with any beneficial use of the water."  Hawaii Administrative Rules § 11-54-4(a).

87.     In addition, as alleged in detail in Appendix A to this Complaint, on December 23, 2010 and January 13, 2011, samples drawn from storm water discharges at the permitted discharge point into Waimanalo Gulch exceeded the 2010 NPDES Permit's effluent limitations for iron, zinc, and/or pH.

88.     In causing or allowing discharges of storm water that had come into contact with solid waste and garbage, Defendants failed to comply with the terms of the 2009 SWPCP, in that they failed to "[p]revent[] run-off of surface water that has contacted waste," to "[c]ontrol[] erosion to prevent loss of cover or washout of refuse slopes, to "[m]anage leachate," and/or to "[r]etain[] and remov[e] silt from surface water before it is discharged to the site," in accordance with Section 2.5.6 of the SWPCP, and failed to maintain "surface water drainage around the perimeter of the landfill to prevent surface water run-on into the active disposal area", in accordance with Section 4.2.2 of the 2009 SWPCP.  Defendants also failed to appropriately handle contaminated storm water removed from Cell E6 as leachate

25

in accordance with Section 4.1.3 of the 2009 SWPCP and the letter of September 21, 2010 updating the SWPCP.

89.     The 2010 NPDES Permit provides that "The Permittee shall … [i]mplement, operate, and maintain the facility's SWPCP to ensure that storm water discharges associated with industrial activities will not cause or contribute to a violation of applicable State water quality standards (WQS).  Discharges of storm water associated with industrial activates shall comply with WQS…." Id. ¶ 3.

90.     The discharges alleged in this Second Claim for Relief were thus violations of the 2010 NPDES Permit.

91.     Upon information and belief, Defendants have not taken all steps necessary to ensure that during future large storms, storm water contaminated by contact with municipal solid waste and garbage will not again be released into Waimanalo Gulch in violation of their NPDES Permit.

92.     Pursuant to Sections 309(b) and (d) of the CWA, 33 U.S.C. §§ 1319(b) and (d), Defendants are liable for injunctive relief and civil penalties of up to $37,500 per day for each discharge of a pollutant in violation of the 2010 NPDES Permit, and for each violation of a condition or limitation of that permit. See 40 C.F.R. § 19.4.

93.     Pursuant to Hawaii Revised Statutes Section 342D-30, Defendants are liable for civil penalties of up to $25,000 per day for each discharge of a pollutant

in violation of the 2010 NPDES Permit, and for each violation of a condition or limitation of that permit.

## THIRD CLAIM FOR RELIEF
*(Ongoing Discharges of Pollutants and other Violations of the Conditions or Limitations of the 2010 and 2013 NPDES Permits)*

94.     Paragraphs 1 through 73 are incorporated herein by reference.

95.     Defendants are required under the 2010 and 2013 NPDES Permits and the 2012 CWA Order to conduct regular sampling of their storm water discharges. Defendants have at various times conducted additional sampling of their storm water discharges.

96.     As alleged in detail in Appendix A to this Complaint, on numerous occasions between at least March 6, 2012 and December 1, 2013, storm water discharges at the permitted discharge point to Waimanalo Gulch exceeded the 2010 NPDES Permit's effluent limitations for iron, zinc, total suspended solids, and/or pH.  Each such exceedance was a violation of the conditions or limitations of the 2010 NPDES Permit.

97.     As alleged in detail in Appendix B to this Complaint, on numerous occasions between at least December 15, 2013, and November 23, 2015, storm water discharges at the permitted discharge point into Waimanalo Gulch exceeded the 2013 NPDES Permit's effluent limitations for iron, zinc, total suspended solids

("TSS"), pH, and/or lead.  Each such exceedance was a violation of the conditions or limitations of the 2013 NPDES Permit.

98.    Defendants have also failed to monitor and report storm water flow at least once per calendar year from at least 2010 through 2015, as required under the terms of the 2010 and 2013 NPDES Permits.

99.    As demonstrated by Defendants' repeated failures to meet the effluent limitations for TSS set forth in the NPDES Permits, as identified in Appendices A and B, from at least March 6, 2012 through August 8, 2015, Defendants were not successfully "[r]etaining and removing silt from surface water before it is discharged from the site" in accordance with Section 2.5.6 of the 2009 SWPCP, nor effectively controlling erosion in accordance with Sections 4.2.1 and 4.3.8 of the 2009 SWPCP, and were thus in violation of the 2010 and 2013 NPDES Permits.

100.   Defendants also failed to timely update the SWPCP to reflect changes at the Landfill:

- As of February 14, 2011, the Western Diversion Project was complete and operational, but the SWPCP was not revised to reflect this change until April 27, 2011.

- Individual members of the Landfill's "Storm Water Pollution Control Team" were identified in Section 5.1.1 of the 2009 SWPCP.  This

information was not timely updated to reflect staffing changes at the
Landfill.

- Defendants have made significant changes to the operation of the
  Landfill's sedimentation basin since 2013, including installation of a
  floating boom decanter and oil/water separator and revision of
  discharge sampling methodology to address the 2016 retrofit to a
  single outfall pipe, but have not updated the SWPCP to reflect those
  changes.

These failures to timely update the SWPCP were and are violations of the 2010
and 2013 NPDES Permits.

101.   Upon information and belief, the types of effluent limitation and
permit condition violations alleged in this Third Claim for Relief are ongoing, and
will continue unless and until Defendants are ordered to take all steps necessary to
bring their storm water discharges and monitoring, reporting, and operating
practices into compliance with the conditions and limitations of their NPDES
Permit.

102.   Pursuant to Sections 309(b) and (d) of the CWA, 33 U.S.C.
§§ 1319(b) and (d), Defendants are liable for injunctive relief and civil penalties of
up to $37,500 per day for each discharge of a pollutant in violation of an NPDES
Permit, and for each violation of a condition or limitation in that permit occurring

on or before November 2, 2015, and up to $53,484 per day for each discharge of a pollutant in violation of an NPDES Permit, and for each violation of a condition or limitation in that permit occurring after November 2, 2015.  See 40 C.F.R. § 19.4.

103.   Pursuant to Hawaii Revised Statutes Section 342D-30, Defendants are liable for civil penalties of up to $25,000 per day for each discharge of a pollutant in violation of an NPDES Permit, and for each violation of a condition or limitation in that permit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff the United States respectfully requests that this Court:

1.   Impose civil penalties on Defendants pursuant to Section 309(d) of the CWA in an amount of up to $37,500 per day for each discharge in violation of Section 301(a) of the CWA, and for each violation of any condition or limitation of an NPDES permit occurring on or before November 2, 2015, and up to $53,484 per day for each discharge in violation of Section 301(a) of the CWA, and for each violation of any condition or limitation of an NPDES permit occurring after November 2, 2015;

2.   Impose civil penalties on Defendants, pursuant to Hawaii Revised Statutes Section 342D-30, in an amount of up to $25,000 per day for each violation of any condition or limitation of an NPDES permit;

3.     Impose appropriate injunctive relief on Defendants pursuant to

Section 309(b) of the CWA and Hawaii Revised Statutes Section 342D-11 as may

be necessary to prevent, detect and/or mitigate future discharges from the Landfill

in violation of the CWA, and future violations of the conditions and limitations of

the current NPDES Permit; and

4.     Grant the United States and DOH such other relief as the Court deems

appropriate.

Respectfully submitted,

FOR THE UNITED STATES
OF AMERICA:

Dated:     April 29   , 2019.

ELLEN M. MAHAN
Deputy Section Chief
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice

DAVIS H. FORSYTHE
Trial Attorney
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
999 18th Street
South Terrace – Suite 370
Denver, CO 80202
Phone: 303-844-1391
Fax: 303-844-1350
davis.forsythe@usdoj.gov

31

FOR THE HAWAII DEPARTMENT
OF HEALTH:

Dated: February 12 , 2019.

EDWARD G. BOHLEN
Deputy Attorney General
Health and Human Services Division
Department of the Attorney General
465 South King St., Room 200
Honolulu, Hawaii 96813
(808) 587-3050
Edward.G.Bohlen@hawaii.gov

32

**Appendix A: Violations of 2010 NPDES Permit Effluent Limitations**

| Sample Date | Pollutant | Measurement | Units | Limit |
|---|---|---|---|---|
| 12/23/2010 | Iron, Total Recoverable | 4.5 | mg/L | 1.0 |
| 12/23/2010 | Zinc, Total Recoverable | 0.044 | mg/L | 0.022 |
| 1/13/2011 | pH | 8.13 | S.U. | 5.5-8.0 |
| 1/13/2011 | Iron, Total Recoverable | 8.6 | mg/L | 1.0 |
| 3/6/2012 | pH | 8.08 | S.U. | 5.5-8.0 |
| 3/6/2012 | TSS | 970 | mg/L | 100 |
| 3/6/2012 | Iron, Total Recoverable | 180 | mg/L | 1.0 |
| 3/6/2012 | Zinc, Total Recoverable | 0.13 | mg/L | 0.022 |
| 3/21/2012 | pH | 8.41 | S.U. | 5.5-8.0 |
| 3/21/2012 | Iron, Total Recoverable | 2.1 | mg/L | 1.0 |
| 1/14/2013 | pH | 8.97 | S.U. | 5.5-8.0 |
| 1/14/2013 | Iron, Total Recoverable | 25 | mg/L | 1.0 |
| 1/14/2013 | Lead, Total Recoverable | 0.05 | mg/L | 0.029 |
| 1/14/2013 | Zinc, Total Recoverable | 0.26 | mg/L | 0.022 |
| 1/14/2013 | TSS | 340 | mg/L | 100 |
| 3/10/2013 | pH | 9.40 | S.U. | 5.5-8.0 |
| 3/10/2013 | Iron, Total Recoverable | 16 | mg/L | 1.0 |
| 3/10/2013 | Zinc, Total Recoverable | 0.1 | mg/L | 0.022 |
| 3/10/2013 | TSS | 160 | mg/L | 100 |
| 4/24/2013 | pH | 8.70 | S.U. | 5.5-8.0 |
| 4/24/2013 | Iron, Total Recoverable | 46 | mg/L | 1.0 |
| 4/24/2013 | Zinc, Total Recoverable | 0.12 | mg/L | 0.022 |
| 4/24/2013 | TSS | 1,100 | mg/L | 100 |
| 10/14/2013 | pH | 8.69 | S.U. | 5.5-8.0 |
| 10/14/2013 | Iron, Total Recoverable | 94 | mg/L | 1.0 |
| 10/14/2013 | Zinc, Total Recoverable | 0.24 | mg/L | 0.022 |
| 10/14/2013 | TSS | 11,000 | mg/L | 100 |
| 12/1/2013 | pH | 8.22 | S.U. | 5.5-8.0 |
| 12/1/2013 | Iron, Total Recoverable | 12 | mg/L | 1.0 |
| 12/1/2013 | Zinc, Total Recoverable | 0.039 | mg/L | 0.022 |
| 12/1/2013 | TSS | 160 | mg/L | 100 |

**Appendix B: Violations of 2013 NPDES Permit Effluent Limitations**

| Sample Date | Pollutant | Measurement | Units | Limit |
|---|---|---|---|---|
| 12/15/2013 | pH | 8.60 | S.U. | 5.5-8.0 |
| 12/15/2013 | Iron, Total Recoverable | 5.1 | mg/L | 1.0 |
| 12/15/2013 | Zinc, Total Recoverable | 0.023 | mg/L | 0.022 |
| 12/19/2013 | pH | 8.73 | S.U. | 5.5-8.0 |
| 12/19/2013 | Iron, Total Recoverable | 1.8 | mg/L | 1.0 |
| 1/14/2015 | Iron, Total Recoverable | 2.7 | mg/L | 1.0 |
| 2/4/2014 | pH | 8.42 | S.U. | 5.5-8.0 |
| 2/4/2014 | Iron, Total Recoverable | 5 | mg/L | 1.0 |
| 2/4/2014 | Zinc, Total Recoverable | 0.048 | mg/L | 0.022 |
| 3/8/2014 | Zinc, Total Recoverable | 0.024 | mg/L | 0.022 |
| 6/3/2014 | Iron, Total Recoverable | 1.9 | mg/L | 1.0 |
| 6/3/2014 | Zinc, Total Recoverable | 0.069 | mg/L | 0.022 |
| 10/19/2014 | pH | 8.60 | S.U. | 5.5-8.0 |
| 10/19/2014 | Iron, Total Recoverable | 6.8 | mg/L | 1.0 |
| 10/19/2014 | Zinc, Total Recoverable | 0.033 | mg/L | 0.022 |
| 10/20/2014 | Iron, Total Recoverable | 62 | mg/L | 1.0 |
| 10/20/2014 | Zinc, Total Recoverable | 0.2 | mg/L | 0.022 |
| 10/20/2014 | TSS | 720 | mg/L | 100 |
| 10/20/2014 | Lead, Total Recoverable | 0.030 | mg/L | 0.029 |
| 2/14/2015 | pH | 8.44 | S.U. | 5.5-8.0 |
| 2/14/2015 | TSS | 160 | mg/L | 100 |
| 2/14/2015 | Iron, Total Recoverable | 12 | mg/L | 1.0 |
| 2/14/2015 | Zinc, Total Recoverable | 0.056 | mg/L | 0.022 |
| 6/15/2015 | pH | 8.38 | S.U. | 5.5-8.0 |
| 6/15/2015 | TSS | 310 | mg/L | 100 |
| 6/15/2015 | Iron, Total Recoverable | 14 | mg/L | 1.0 |
| 6/15/2015 | Zinc, Total Recoverable | 0.056 | mg/L | 0.022 |
| 8/24/2015 | pH | 8.53 | S.U. | 5.5-8.0 |
| 8/24/2015 | TSS | 610 | mg/L | 100 |
| 8/24/2015 | Iron, Total Recoverable | 46 | mg/L | 1.0 |
| 8/24/2015 | Zinc, Total Recoverable | 0.16 | mg/L | 0.022 |
| 9/1/2015 | Iron, Total Recoverable | 5.9 | mg/L | 1.0 |
| 9/1/2015 | Zinc, Total Recoverable | 0.024 | mg/L | 0.022 |
| 9/1/2015 | pH | 8.96 | S.U. | 5.5-8.0 |
| 9/11/2015 | Iron, Total Recoverable | 1.3 | mg/L | 1.0 |
| 9/11/2015 | pH | 8.87 | S.U. | 5.5-8.0 |
| 11/23/2015 | Iron, Total Recoverable | 2.7 | mg/L | 1.0 |
| 11/23/2015 | Zinc, Total Recoverable | 0.036 | mg/L | 0.022 |